IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs November 4, 2025

## CLIFFORD LAMAR CLARK, III v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Henderson County**
**No. 22-084-1, 22-307-3, 23-223-3        Kyle C. Atkins, Judge**

_____

## No. W2025-00038-CCA-R3-PC

_____

The Petitioner, Clifford Lamar Clark, III, appeals from the Henderson County Circuit Court's denial of his petition for post-conviction relief, arguing that trial counsel rendered ineffective assistance and that he did not knowingly, voluntarily, and intelligently enter into the plea agreement. Discerning no error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

STEVEN W. SWORD, J., delivered the opinion of the court, in which J. ROSS DYER and JOHN W. CAMPBELL, SR., JJ., joined.

Joshua L. Phillips, Lexington, Tennessee, for the appellant, Clifford Lamar Clark, III.

Jonathan Skrmetti, Attorney General and Reporter; Park Huff, Assistant Attorney General; Jody Pickens, District Attorney General; and Shaun A. Brown, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I.    FACTUAL AND PROCEDURAL HISTORY

This case arises from the Petitioner's four charges in three Henderson County Circuit Court cases. In case number 22-084-1, the Petitioner was charged with theft of property from Walmart valued over $1000. In case number 22-307-3, the Petitioner was charged with burglary and theft of property from Walmart valued over $1000. In case number 23-223-3, the Petitioner was charged with stalking a female employee at the jail where he was housed. Pursuant to a negotiated plea agreement, the Petitioner pled guilty as charged on October 13, 2023, and judgments were filed on November 14, 2023. The

Petitioner's plea agreement provided for concurrent, Range II, multiple offender sentences of four years for each of the theft convictions and six years for the burglary conviction. The Petitioner also received a concurrent sentence of eleven months and twenty-nine days for his misdemeanor stalking conviction, with release after service of 75% of his sentence. The effective sentence was a probationary sentence of six years at 35%, with the required service of his stalking sentence to be completed prior to release on probation.

On August 23, 2024, the Petitioner filed a *pro se* petition for post-conviction relief, which claimed, among other issues,[1] that trial counsel rendered ineffective assistance by failing to visit him in jail during the pendency of his cases, by failing to adequately review or provide him copies of discovery materials, by failing to adequately investigate witnesses in his case, by forcefully preventing him from testifying at his preliminary hearing, and by failing to adequately explain the terms of his plea agreement. Additionally, he claims that he did not knowingly, voluntarily, and intelligently enter into the plea agreement.

On December 13, 2024, the trial court conducted a hearing on the Petitioner's claims. The Petitioner testified that trial counsel never reviewed discovery with him in any of his three cases and that counsel had never requested discovery in the stalking case. He testified that he first saw the discovery when his post-conviction counsel showed it to him. He stated the only time he spoke with trial counsel was at court hearings and that trial counsel never visited him in jail. The Petitioner testified that the trial court ordered trial counsel to visit him, but he never did.

The Petitioner further testified that trial counsel only "very briefly" went over the plea offer with him and did not explain anything in the offer definitively. He stated counsel did not explain that the plea included no possibility of expungement or work release. He also stated that the only thing trial counsel explained was that the plea provided concurrent sentences in all three cases and that the District Attorney would not object to the Petitioner's release on the day of the plea. He testified that trial counsel told him that if he did not get out by the following Monday, then he should contact counsel, who he stated had told him that he would assist in trying to get him released. He stated that he texted trial counsel twice on Monday but received no response. The Petitioner testified that trial counsel did not tell him that once the plea was entered, there would be nothing counsel could do to secure his release. He stated that there was a misconception on his part that his release was imminent and that nothing was said to him about serving 120 days in custody.

The Petitioner testified that on the day of the plea, trial counsel told him the judge was in a hurry and that trial counsel did not care whether the Petitioner took the plea. He

---

[1] The petition raised several claims which the trial court denied and which are not set forth in this opinion because they are not challenged on appeal.

stated that trial counsel advised him that, if he did not take the plea, it would be April before they were back in court and that the Petitioner would receive the maximum sentence, to be served at 60%. The Petitioner testified that he asked why the stalking case was being handled the way it was, by requiring service of the sentence. He testified that trial counsel had responded by stating that the State was "doing it to satisfy the b****," whose position the State would back no matter what. The Petitioner testified that this made him feel he had no choice but to take the plea and that his trial counsel would not help him.

The Petitioner also testified that he provided numerous witnesses to trial counsel on the stalking case just before his preliminary hearing. He testified that trial counsel reviewed the materials but never subpoenaed or spoke with any of the witnesses and that he never heard anything from trial counsel about the witnesses. He also opined that he thought trial counsel did a good job at his preliminary hearing, but not on anything else. The Petitioner testified that there had been false testimony from the victim at the preliminary hearing on the stalking case and that when he tried to stand up to "speak the truth," trial counsel had put his hand and arm up and told him to "sit down you crazy m***** f*****." The Petitioner claimed this was alarming to him, but he knew his counsel had legal knowledge and experience, and he thought he understood why trial counsel was doing this. He then stated, however, that "the truth is the truth" and that he was not guilty of the offense.

The Petitioner also testified that he filed several *pro se* motions with the trial court, including a motion for a change of venue, a motion for a speedy trial, and a motion to dismiss due to harassment and aggravated perjury. He stated that trial counsel advised him that the judge would say that all the motions were "trier of fact" motions, but that he did not explain what that meant.

The Petitioner testified that, after he was released in January of 2024, he went to see trial counsel. He stated he had no hard feelings with his prior trial counsel and that trial counsel had printed the post-conviction forms for him when he went to see him.

On cross-examination, the Petitioner agreed that the witnesses he provided to trial counsel were for the stalking case and that he had already served his sentence for that conviction. The Petitioner stated, however, that his case was not over for him. He stated the female he allegedly stalked was a former employee at the jail who had said "she was his wife." He testified that he wanted a trial on all three of his cases. He stated that he understood that if relief were granted, he would return to jail.

The Petitioner admitted that the trial court went over the terms of his plea agreement with him at the time of his plea. He agreed that the trial court spoke with him about what he was pleading to and what the sentence would be. He stated that the trial court never

discussed expungement or work release, but he agreed he did not qualify for expungement because he was a career offender. He also agreed that he told the trial court that he wanted to enter the plea, but stated he did not recall the words he used.

The Petitioner stated that the Walmart employees changed their stories concerning the value of the merchandise in the general sessions court, and that the stalking charge was based upon his giving the victim a single flower.

During the redirect examination, the Petitioner stated that he understood that if he were granted relief, he would return to jail and be granted a bond. He testified that he wanted the opportunity to prove the charges were false and that there was "a lot of aggravated perjury" in his case.

Trial counsel testified that the Petitioner retained his services for the two theft charges and the burglary charge, but he thought he may have taken the misdemeanor stalking charge pro bono. He testified he had discussed the Walmart videos with the Petitioner and that he scanned the discovery into his computer in August of 2023. He recalled that the discovery only consisted of an incident report and the Walmart videos. He stated that he advised the Petitioner that the discovery in the stalking case was not yet available, but that the Petitioner could obtain it after the plea as a public record.

On cross-examination, trial counsel testified that the Petitioner did not "like the merits of the stalking case" and that he had agreed with the Petitioner. He stated he specifically recalled discussing with the Petitioner that the Petitioner would not have access to the discovery in the stalking case before the plea. Trial counsel stated that the sentence in the stalking case had already been completed, and that the only sentences still being served by the Petitioner at the time of the post-conviction hearing were the probated sentences for the thefts and burglary.

Trial counsel testified he had discussed identity issues in the Walmart videos with the Petitioner. Trial counsel opined that he had thought it was a good case to take to trial. He testified that the Petitioner also heard the evidence presented at the preliminary hearing, but he could not recall with certainty whether the videos were shown there.

Trial counsel recalled providing reciprocal discovery and contacting Walmart regarding the prices of the allegedly stolen merchandise. He testified that he had tried to challenge the charges in a motion to dismiss the indictment, but the trial court had denied it. He explained that he had thought the value of the merchandise did not rise to the level of a felony charge.

Trial counsel testified that he believed the plea offer was a good one. He stated he had never received an offer for a career offender that did not include prison time. Trial counsel recalled that the State had filed a notice for enhanced sentencing of the Petitioner as a career offender. He also recalled discussing the plea offer with the Petitioner, which was for the Petitioner to serve eleven months and twenty-nine days on the stalking offense and then be released to probation for six years for the burglary and theft charges. Trial counsel testified that, while they agreed the merits of the stalking case were questionable, the Petitioner understood the benefits of the plea. He stated the Petitioner was "pretty intelligent" and had no problem communicating with him. He testified that the Petitioner seemed to understand the process and what was going on in the courtroom, and he did not recall any difficulty in understanding on the Petitioner's part during the plea colloquy.

On redirect examination, trial counsel testified he could not say how many times he visited with the Petitioner, but he stated he and the Petitioner "knew the case inside and out." He explained that even if the theft values had been misdemeanor amounts, it would not have affected the burglary charge or potential burglary sentence. He reiterated that he could not recall if the videos were shown at the preliminary hearing or if he had provided the incident report to the Petitioner.

At the conclusion of the evidentiary hearing, the post-conviction court made the following findings of fact and conclusions of law as part of its ruling:[2]

[Petitioner's] first ground is that it was an unlawfully induced guilty plea or an involuntarily guilty plea. And the [c]ourt, as always, went through the guilty plea with [the Petitioner], asked him if he'd had plenty of time to talk with his lawyer, which he told me he did. I asked him if his lawyer went over his discovery with him. He said yes.

I asked him if his lawyer went over the strengths and the weaknesses of his case and the pros and cons of going to trial as opposed to entering into a guilty plea. [The Petitioner] said yes, told me that he'd gone over the guilty plea with him and [it had] been explained to him what was contained in that guilty plea, what the consequences of entering that guilty plea were and what rights he would be giving up by entering into that guilty plea.

So[,] with regard to number one, I just don't see anything before the [c]ourt indicating that he did not have a proper understanding of the guilty

[2] The appellate record does not contain a copy of the transcript of the Petitioner's plea submission hearing.

plea, what its consequences were and what he was doing, and that in any way [trial counsel] ineffectively advised him about his guilty plea.

The post-conviction court also noted that the Petitioner's plea agreement allowed him to be sentenced as a Range II offender rather than a career offender, as the State noticed him, which would have resulted in a substantially longer sentence. The post-conviction court further noted that if the Petitioner had gone to trial and been convicted, the court would have had no discretion in sentencing and would have been limited by the career offender statute, which would have required prison time.

The post-conviction court denied post-conviction relief, both orally from the bench and by written order as to all the issues raised by the Petitioner, finding that the Petitioner had failed to establish by clear and convincing evidence that trial counsel's performance was either deficient or prejudicial to his defense. This timely appeal followed.

## II.    ANALYSIS

On appeal, the Petitioner argues that trial counsel rendered ineffective assistance by failing to visit him in jail during the pendency of his cases, by failing to adequately review or provide him copies of discovery materials, by failing to adequately investigate witnesses in his case, by forcefully preventing him from testifying at his preliminary hearing, and by failing to adequately explain the terms of his plea agreement. Additionally, the Petitioner argues that he did not knowingly, voluntarily, and intelligently enter into the plea agreement. The State responds that the post-conviction court appropriately denied relief. We agree with the State.

The Post-Conviction Procedure Act provides relief only when the petitioner's "conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103. In a post-conviction proceeding, the petitioner has the burden of proving his allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f); Tenn. S. Ct. R. 28, Sec. 8(D)(1). "Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *Hicks v. State*, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998) (citing *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 n.3 (Tenn. 1992)). The post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates against them, *Kendrick v. State*, 454 S.W.3d 450, 457 (Tenn. 2015) (citations omitted), while its application of the law to those factual findings and the conclusions drawn therefrom are reviewed *de novo* with no presumption of correctness, *Holland v. State*, 610 S.W.3d 450, 455 (Tenn. 2020) (citations omitted).

### A. INEFFECTIVE ASSISTANCE OF COUNSEL

Both the Constitution of the United States and the Constitution of Tennessee provide the criminal defendant the right to the effective assistance of counsel. U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense."); Tenn. Const. art. 1, § 9 ("That in all criminal prosecutions, the accused hath the right to be heard by himself and his counsel"); *see also Davidson v. State*, 453 S.W.3d 386, 392-93 (Tenn. 2014). To succeed on a claim of ineffective assistance of counsel, the post-conviction petitioner must prove, and the record must affirmatively establish, both that counsel performed deficiently and that this deficient performance adversely impacted the petitioner's defense. *Strickland v. Washington*, 466 U.S. 668, 693 (1984); *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). *Strickland*'s two-pronged standard also applies to petitioners alleging ineffective assistance of counsel regarding a guilty-pled conviction; in that context, a post-conviction petitioner "must establish a reasonable probability that, but for the errors of his counsel, he would not have entered the plea." *Adkins v. State*, 911 S.W.2d 334, 349 (Tenn. Crim. App. 1994 (citing *Hill v. Lockhart*, 474 U.S. 52, 59 (Tenn. 1985)). "A court need not address both prongs if the petitioner fails to demonstrate either one of them." *Davidson*, 453 S.W.3d at 393. Each element of the *Strickland* analysis of an ineffective assistance of counsel claim is a mixed question of law and fact that this court reviews *de novo*. *Phillips v. State*, 647 S.W.3d 389, 400 (Tenn. 2022) (citing *Dellinger v. State*, 279 S.W.3d 282, 294 (Tenn. 2009)); *Kendrick*, 454 S.W.3d at 457.

Deficient performance is that which, in consideration of "all the circumstances" and the prevailing professional norms at the time of counsel's representation, falls below an objective standard of reasonableness. *Id*. (quoting *Strickland*, 466 U.S. at 688). We defer to counsel's strategic and tactical decisions, even if such decisions were unsuccessful or harmful to the defense, so long as they were "informed ones based upon adequate preparation." *Moore v. State*, 485 S.W.3d 411, 419 (Tenn. 2016) (citing *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996)). In other words, so long as counsel's decisions are made after adequate preparation, this court "will not grant the petitioner the benefit of hindsight, second-guess a reasonably based trial strategy, or provide relief on the basis of a sound, but unsuccessful, tactical decision made during the course of the proceedings." *Berry v. State*, 366 S.W.3d 160, 172-73 (Tenn. Crim. App. 2011). Thus, a petitioner who alleges the ineffective assistance of counsel must, through clear and convincing evidence, overcome the strong presumption "that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689 (citation omitted).

The post-conviction petitioner must also prove that counsel's deficient performance affected the outcome of his or her trial; that is, there must be "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been

different." *Id*. at 694. A reasonable probability is that which is "sufficient to undermine confidence in the outcome" of the trial. *Id*. Accordingly, "a petitioner must establish that counsel's deficient performance was of such a degree that it deprived him of a fair trial and called into question the reliability of the outcome." *Mobley v. State*, 397 S.W.3d 70, 81 (Tenn. 2013) (internal quotation marks omitted) (citing *Pylant v. State*, 263 S.W.3d 854, 869 (Tenn. 2008)). As stated above, when a petitioner claims ineffective assistance of counsel in a case which resulted in a guilty plea, as here, the petitioner "must show a reasonable probability that, but for trial counsel's deficient performance, 'he would not have pled guilty and would have insisted on going to trial.'" *Grindstaff v. State*, 297 S.W.3d 208, 221 (Tenn. 2009) (citing *Hill*, 474 U.S. at 59). Thus, the focus of the prejudice requirement in a guilty-pled case is whether the deficiency in performance "affected the outcome of the plea process." *Hill*, 474 U.S. at 59.

Here, the Petitioner contends that trial counsel rendered deficient performance by failing to visit him in jail during the pendency of his cases and that counsel did not review discovery materials or provide him with copies of those materials. In consideration of these claims, the post-conviction court implicitly credited trial counsel's testimony that he had discussed the discovery videos with the Petitioner in the theft cases and had explained that no discovery was available in the stalking case prior to the plea offer. Trial counsel testified that, while he could not recall the number of times he visited the Petitioner in jail, he and the Petitioner knew the Petitioner's cases "inside and out." The post-conviction court also found that the Petitioner was asked during his plea hearing whether trial counsel had gone over his discovery with him, to which the Petitioner answered affirmatively. The post-conviction court specifically found that, even if there was a deficiency in failing to file a discovery motion in the stalking case, the Petitioner failed to establish any prejudice related thereto. Although the Petitioner generally claims that he has since had the opportunity to independently review the discovery materials, he has failed to specify which evidence contained within the allegedly withheld discovery materials would have led him to reject the negotiated plea agreement and proceed to trial. *See Balfour v. State*, No. W2019-01468-CCA-R3-PC, 2020 WL 4331363, at *5 (Tenn. Crim. App. July 27, 2020) (affirming denial of post-conviction relief where the petitioner "failed to show or even allege in his brief how trial counsel's alleged deficiencies in this area affected the outcome of his case"), *perm. app. denied* (Tenn. Nov. 17, 2020). Without such proof, the Petitioner is unable to establish prejudice, and his claim of ineffective assistance of counsel must fail. *Id*.; *see also Beene v. State*, No. M2005-01322-CCA-R3-PC, 2006 WL 680919, at *6 (Tenn. Crim. App. Mar. 17, 2006) (affirming denial of post-conviction relief where the petitioner "failed to provide clear and convincing evidence that his counsel failed to provide discovery materials and failed to explain the strength of the State's case against him"), *perm. app. denied* (Tenn. June 26, 2006). The post-conviction court appropriately denied relief on this basis.

Next, the Petitioner claims trial counsel rendered ineffective assistance by failing to investigate and present numerous witnesses at the preliminary hearing. However, the Petitioner presented none of these alleged witnesses at the post-conviction hearing, and the post-conviction court correctly found that the Petitioner had failed to carry his burden of proof on this claim. *See Black v. State*, 794 S.W.2d 752, 757-58 (Tenn. Crim. App. 1990).

The Petitioner also claims that trial counsel was ineffective by forcefully preventing him from testifying at his preliminary hearing. However, the Petitioner testified at the post-conviction evidentiary hearing that he understood why counsel stopped him from speaking out in open court when a witness was testifying. The Petitioner testified that trial counsel stopped the outburst, but he did not testify that he specifically requested otherwise to take the stand and testify. The Petitioner also testified that he generally thought trial counsel had performed well at the preliminary hearing. When questioning trial counsel, the Petitioner focused on other aspects of the preliminary hearing and did not ask about trial counsel's allegedly stopping the Petitioner's attempted outburst or if the Petitioner had communicated a desire to testify. The Petitioner's petition generally raised claims of ineffective assistance of counsel but did not specify this claim; the post-conviction court's rulings followed the claims as they were raised in the petition and included a ruling that the Petitioner had failed to carry his burden of proof on his *Strickland* claims and had failed to establish any other claims by clear and convincing evidence. Based upon our review of the record, we agree with the post-conviction court that the Petitioner has failed to carry his burden of proof on this claim. In fact, the Petitioner has failed to even establish that he informed his trial counsel that he wanted to testify. The Petitioner has failed to carry his burden of proof on both deficiency and prejudice related to this claim, and thus, he is not entitled to relief.

The Petitioner also claims trial counsel rendered deficient performance by failing to adequately explain the terms of his plea agreement. Although the Petitioner testified on direct examination that he was not fully advised concerning his plea offer and that he felt he had no choice but to enter a plea of guilty, he also testified on cross-examination that the trial court went over the guilty pleas with him at the time of his plea and that the trial court talked to him about what he was going to get, what he was pleading to, and what the sentence was going to be. The Petitioner also agreed that he told the trial court that he wanted to enter the plea.

The post-conviction court also found that, when asked at the plea hearing, the Petitioner had advised the trial court that he had plenty of time to talk with trial counsel; that trial counsel had gone over the strengths and weaknesses of his case and the pros and cons of going to trial as opposed to entering a guilty plea; and that trial counsel had gone over the guilty plea with him, including what was contained in the guilty plea, what the consequences of entering the guilty plea were, and what rights the Petitioner would be

giving up by entering into the guilty plea. Based upon the record and its findings, the post-conviction court found that the Petitioner had failed to establish any ineffective assistance of trial counsel on this issue. We are bound by the post-conviction court's findings of fact unless the record preponderates against them, which it does not. Despite claiming, contrary to the post-conviction court's findings, that he was inadequately advised regarding his guilty plea, the Petitioner has failed to include a transcript of the guilty plea submission hearing or any other evidence that would tend to rebut the post-conviction court's findings of fact regarding this claim. The Petitioner's statements during his guilty plea submission hearing, as referenced by the post-conviction court, weigh heavily upon our analysis of his claim of ineffective assistance of counsel because "[s]olemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). Simply, the Petitioner has not carried his burden of proving either that counsel was deficient in his representation or that, but for trial counsel's actions, he would not have pled guilty, particularly considering his repeated assurances in open court that he understood the terms of his plea agreement. *See Taylor v. State*, No. E2023-00636-CCA-R3-PC, 2024 WL 341443, at *5 (Tenn. Crim. App. Jan. 30, 2024) (affirming denial of post-conviction relief over a petitioner's claim that trial counsel inadequately explained the terms of a plea agreement where the Petitioner testified he reviewed the plea agreement, understood its terms, attested to his signing the agreement, and that he was satisfied with trial counsel's performance), *perm. app. denied* (Tenn. June 20, 2024).

Accordingly, the record supports the post-conviction court's findings that the Petitioner failed to carry his burden of proof on his various claims of ineffective assistance of counsel.

## B. Knowing, Voluntary, and Intelligent Guilty Plea

The Petitioner also argues that his plea was not entered knowingly, voluntarily, and intelligently. The Due Process Clause of the United States Constitution requires that a guilty plea be entered knowingly, voluntarily, and intelligently. *Boykin v. Alabama*, 395 U.S. 238, 243 n.5 (1969); *Lane v. State*, 316 S.W.3d 555, 562 (Tenn. 2010). "A guilty plea is knowingly, voluntarily, and intelligently entered if it represents 'a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Davis v. State*, No. M2024-01238-CCA-R3-PC, 2025 WL 2453101, at *11 (Tenn. Crim. App. Aug. 26, 2025) (quoting *Jaco v. State*, 120 S.W.3d 828, 831 (Tenn. 2003)), *no perm. app. filed*. A trial court must consider the totality of the circumstances in determining if a plea has been entered knowingly, voluntarily, and intelligently. *Blankenship v. State*, 858 S.W.2d 897, 905 (Tenn. 1993). A "formidable barrier in any subsequent collateral proceedings" is created by a defendant's declarations in open court because such declarations "carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977); *Davis*, 2025 WL 2453101, at *11.

We note that the Petitioner has failed to include transcripts from the plea hearing in the appellate record.[3] The appealing party bears the obligation of preparing a complete and adequate record. *See* Tenn. R. App. P. 24(b). This transcript is directly relevant to his claim that his guilty plea was not knowingly and voluntarily made. In the absence of the plea submission hearing transcript, we presume the findings of the post-conviction court are correct. *Fifer v. State*, No. W2024-01377-CCA-R3-PC, 2025 WL 1753576, at *6 (Tenn. Crim. App. June 25, 2025) (citing *State v. Bibbs*, 806 S.W.2d 786, 790 (Tenn. Crim. App. 1991)). The post-conviction court clearly relied upon the record from the plea submission hearing in concluding that the Petitioner's plea was entered knowingly and voluntarily. The post-conviction court observed that the Petitioner affirmed to the trial court that he had plenty of time to talk with his attorney, that counsel had gone over discovery with him, that counsel had gone over the strengths and weaknesses of the State's case as well as the "pros and cons" of going to trial as opposed to accepting the plea offer, and that counsel had gone over the plea offer and explained it to him, including the consequences of the plea and the rights he would be giving up. The Petitioner has failed to carry his burden of proof on this claim as well.

### III.   CONCLUSION

Following our review of the record and based upon the foregoing analysis, we affirm the judgment of the post-conviction court.

s/ *STEVEN W. SWORD*_____
STEVEN W. SWORD, JUDGE

---

[3] *See State v. Caudle*, 388 S.W.3d 273, 279 (Tenn. 2012) (when a guilty plea hearing transcript is absent, appellate courts must determine on a case-by-case basis whether the record permits meaningful review under *State v. Bise,* 380 S.W.3d 682 (Tenn.2012)). "If . . . the record is adequate for a meaningful review, the appellate court may review the merits of the sentencing decision with a presumption that the missing transcript would support the ruling of the trial court." *Caudle*, 388 S.W.3d at 279.